## DELAY IN CONFIRMATION NOT FATAL TO PROCEEDINGS IN FORECLOSURE.

Court of Appeals for Hamilton County.

JULIA McGILL WALTERS v. EMIL HOMBERG; TWO CASES.

Decided, July 15, 1914.

*Judicial Sales—Decree for. Does Not Become Dormant—Proceedings Not Affected by Long Delay in Confirmation—Statute of Limitations Not Operative as to Mortgages in Foreclosure—Formalties in Assignment of a Mortgage—Jurisdiction in Appropriation Proceedings—Sections 8510 and 8546.*

1. A decree for sale does not become dormant, and a plea of laches on account of a delay of fifteen years in applying for confirmation of a sale which was made in due course after the taking of the decree, does not lie in the mouth of the debtor who had failed to satisfy the mortgage and who raises no question as to the validity of the mortgage or the regularity of the proceedings in foreclosure with the exception of the delay in confirmation.

2. A plea that the value of the property involved in such a proceeding has greatly appreciated since the entering of the decree of sale, is of no avail where even the present value is insufficient to satisfy all the claims against it and leave anything over for the mortgagor.

3. The bringing of suit for foreclosure of a mortgage stops the running of the statute of limitations as to such mortgage.

4. Errors will not be deemed prejudicial where their avoidance would not have changed the result of the proceedings.

5. The amendment of Section 8546,. General Code, dispensing with witnesses and an acknowledgment to the assignment of a mortgage, does not go to the extent of causing the assignment to carry the legal title to the land conveyed by the mortgage, but to vest title the provisions of Section 8510 must still be observed.

6. There is nothing in the statute controlling appropriation proceedings which gives to the court in which they are instituted jurisdiction over the property to be condemned, to the exclusion of the jurisdiction of another court in which foreclosure proceedings, involving the same property, have been previously commenced and sale made but not yet confirmed.

*Frank Woodward* and *Hunt, Bennett & Utter,* for plaintiff in error.

*John E. Fitzpatrick* and *Gideon C. Wilson,* contra.

JONES, O. B., J.; SWING, P. J., and JONES, E. H., J., concur.

The first case was a foreclosure proceeding below, brought April 1, 1895, by William M. Ramsey, as guardian of Leora McCammon, to foreclose a second mortgage, recorded August 12, 1891, for $500, and for the sale of a lot on the west side of Reading road north of Burnet avenue belonging to John McGill. There was a prior mortgage on same made by John McGill, then unmarried, to John Frankenberger, and recorded August 6, 1891, to secure a note for $2,700 of that date payable in three years. This loan was made to John McGill by Emil Homberg who furnished the money and was at all times the beneficial owner of the note and mortgage. John Frankenberger had no interest therein except as trustee or agent of said Homberg. Said Frankenberger was a clerk in the office of Louis Reemelin, who was the attorney for the said Homberg in the preparation of said mortgage and in these proceedings up to the time of his death. Said note and mortgage were endorsed in blank by said Frankenberger at the time of their execution and were then delivered to said Homberg. Some time after the record of these two mortgages John McGill conveyed said real estate by deed duly executed and delivered to his Wife Julia McGill.

In this suit John McGill and Julia McGill, his wife and John Frankenberger were the original defendants and were duly served with summons, and were all in default for answer.. Wil-

liam W. Ramsey, who had been appointed as guardian of Leora McCammon to succeed her former guardian, William M. Ramsey, deceased, was substituted as plaintiff in place of the original plaintiff.

Louis Reemelin, who had received from Emil Homberg said note and mortgage executed by John McGill to John Frankenberger and endorsed by him in blank, was made a party and filed an answer setting up said mortgage and asking that the same be declared to be a first lien on said real estate superior to that of plaintiff, and that it be ordered first paid out of the proceeds of said sale.

On July 31, 1897, a decree was entered finding the amount due under plaintiff's note and mortgage $606.66, with interest from March 1, 1896, and ordering that unless said amount was paid within thirty days defendants' equity of redemption should be cut off and an order should issue for the sale of said real estate free of the claims of all parties to said action; and finding that the mortgage to John Frankenberger to secure a note of $2,700 recorded August 6, 1891, was a valid, subsisting and first lien upon said premises, and that Louis Reemelin was the owner and holder thereof.

Defendants, John McGill and Julia McGill, having failed to pay the amount so found due, an order for sale was issued September 8, 1897, and October 19, 1897, a return on same was made by the sheriff showing that sale had been duly made and the real estate had been sold to Louis Reemelin.

No further step was taken in the case until December 20, 1912, when Emil Homberg was on his own application made a party and given leave to plead, and on March 19, 1913, filed a motion to confirm said sale. On or about February 1, 1912, Louis Reemelin died, leaving Evelyn Reemelin his executrix and sole devisee. On June 21, 1913, Emil Homberg filed an answer and cross-petition alleging that Louis Reemelin in his lifetime, subsequent to the return of the order of sale, sold and assigned to Emil Homberg said note and mortgage and all interest in said property, and prayed for a confimation of sale to him as assignee of the purchaser. On the same day the death of Louis Reemelin was suggested to the court and Evelyn Reemelin, his ex-

ecutrix, was made party and by leave filed an answer alleging
and admitting the transfer of the Frankenberger note and
mortgage by Louis Reemelin to Emil Homberger and disclaiming
any interest adverse to Emil Homberg. Then Emil Homberg
filed a motion to confirm the sale and distribute the proceeds.

On September 9, 1913, Julia McGill Walters, who it seems
was formerly Julia McGill, filed an answer. This answer was
afterwards on motion of Homberg stricken from the files and
leave was refused her to file a motion to set aside said sale; and
on hearing of the motion of Homberg the court confirmed the
sale to Emil Homberg, finding that the property has been bid
in at sheriff's sale by Louis Reemelin for the purpose of protect-
ing said mortgage claim of $2,700; that all his interests had been
transferred to Emil Homberg; and ordered the sheriff to con-
vey the property so sold to Emil Homberg, and subrogated said
purchaser to the rights of all parties to said suit, and ordered
the proceeds, $1,000, distributed by paying the court costs, $74.-
68, and paying the balance, $925.32, to Emil Homberg to be ap-
plied as a credit upon his mortgage claim which was then found
to amount to $5,454; and found that the mortgage of William
M. Ramsey, guardian, had been extinguished by proceedings
and sale and it was ordered canceled. Afterwards, Julia Mc-
Gill Walters filed a motion to set aside said decree and for a new
trial, which on hearing was overruled.

It is urged by the plaintiff in error that it was error for the
court to confirm this sale after the lapse of so long a time after
the filing of the petition in foreclosure; that the delay in seek-
ing confirmation amounted to laches.

She stood in the attitude of mortgagor, admitting in her an-
swer the making and entry of decree of foreclosure and sale, and
the sale of the premises to Louis Reemelin, but sought to pre-
vent confirmation of such sale in favor of the mortgagee, but not
because of any question of validity of the mortgage. She did
not deny that the mortgage was made to secure a *bona fide* loan
which had never been repaid, and did not complain of any ir-
regularities in the proceedings.

She raised a question whether Homberg had acquired the in-
terests of Reemelin in the property. It could not be material to

her whether Reemelin or Homberg had become the owner under the purchase—that was a question between them. Nor was it material to her whether the money bid had been paid into the hands of the sheriff, or not. That concerned the sheriff when he made his return. And as the holder of the mortgage was the distributee of the fund, less only the court costs, it was not necessary to pay it in simply to have it paid back again (*Andrews* v. *Johns,* 59 O. S., 65). Her chief objection was that confirmation had been unusually delayed. She had no cause to complain of this delay, as she was herself a party and might at any time have taken steps to move the court to action.

Ramsey, guardian, after sale, finding no possible proceeds to pay his claim probably lost interest, and Reemelin no doubt felt that confirmation could be had whenever the opportunity to dispose of the property might arise. There were none others in interest to complain, as the defendants apparently had no reason to press the matter.

A decree of sale does not become dormant as does a judgment where execution is not issued. All judicial sales in this state require confirmation by the court before they can be completed. *Beaumont* v. *Herrick,* 24 O. S., 445, 446.

In *Fox* v. *Reeder,* 28 O. S., 181, it is held:

"The benefit of the rule relating to *lis pendens* may be lost by such long continued inaction as amounts to gross negligence in the party prosecuting, when such inaction is to the prejudice of innocent persons."

But the court in its opinion, on page 185, uses the following language:

"In *Hunter* v. *The Earl of Hopetown,* 4 McQueen, 972, this is said: 'A suit, though asleep, continues *in pendente* till disposed of, and the parties are still at issue, though the *lis* may have been for years comatose.'

"'An action was commenced in 1845, and a defense lodged. In 1847, the proceedings ceased, and the action became dormant. Held (eighteen years afterward) that the *lis,* though still asleep, was nevertheless *in pendente,* and liable to be roused at the volition of either party.' But in this case no rights of third parties had intervened to which the principle of *lis pendens* could apply. The remarks of the court applied to plaint-

iff and defendant, who were the only parties interested, and, doubtless, as to them the *lis* may be pending so long as the rights of others are not affected thereby.''

The plea of laches attempted to be raised below by plaintiff in error, was not made on behalf of an innocent person, but was made by one who had failed to keep her obligation to repay the loan in an attempt to prevent its collection by the sale of the property which had been pledged to secure it, and therefore had no merit with the court. She said that the city of Cincinnati had acquired rights under appropriation proceedings, because of which the superior court had no jurisdiction to confirm said sale. She showed no authority to represent the city, and it made no claim on its own behalf, and there was no question as between the city and Homberg in the matter.

She said that the property had appreciated in value since the sale. That might be to her advantage if only this appreciation had been more than sufficient to pay off the liens. It appears that the sheriff's sale was for $1,000 while the city later agreed to pay $4,375 for it; but after deducting the taxes and assessments amounting to $2,195.96 there was but $2,179.04 for the net value, while the original loan of $2,700 had not been paid in any part, and with interest added the court found then due upon it $5,454; so there could be no possible interest in any balance for Julia McGill Walters, especially when the second mortgage to Ramsey found in 1895 to be $606.66 would also have to be paid out of the proceeds before she would receive anything on distribution, if the sheriff on re-sale could have secured the amount the city had agreed to pay. And there was no attempt made to show that the value of the property was beyond that agreed upon between Homberg and the city in the appropriation proceedings.

Mrs. Walters, however, claimed that Homberg's mortgage had become unenforceable because of the fifteen years' statute of limitations. That could not be possible in a suit where the mortgage itself is being enforced. The bringing of the action prevented the running of the statute until that action is finally concluded.

It was claimed that the court committed error in striking Mrs. Walter's answer from the files. She had been in default from the time prior to July 6, 1897; it is a matter of discretion in the court whether default should be set aside and leave given to file an answer. *Clark* v. *Clark,* 20 O. S., 128.

The answer admitted the judgment and the decree for sale, and the sale to Reemelin. It undertook to set out reasons why the sale should not be confirmed to Homberg, but stated none why it should not be confirmed to Reemelin. All of the proper matters pleaded therein necessarily were considered by the court in determining the motion of Homberg to confirm the sale. Her answer was not stricken from the files until after the hearing of the evidence on that motion, and no evidence to sustain its allegations was offered by her. In our opinion it was error in the court below, having allowed the answer to be filed, to order it stricken from the files, and also to refuse counsel for Mrs. Walters leave to cross-examine witnesses. It was not error to refuse her leave to file a motion to set aside the sale, as that would only bring the same questions before the court as were necessary to be considered under the motion to confirm on which she was heard. And she was permitted to file a motion to set aside the decree of confirmation and for a new trial, and to be heard upon it, thus furnishing an opportunity to present all her objections to the court. The matters set up in her answer, if established, did not, however, furnish sufficient reasons why the sale should not be confirmed, and the errors above mentioned can not therefore be deemed prejudicial, especially when Mrs. Walters could have prevented the confirmation by a redemption of the property at any time before final confirmation, and she made no offer or attempt to redeem.

A careful examination of the record fails to disclose any error prejudicial to the plaintiff in error. and the judgment will therefore be affirmed.

---

The second case below was an appropriation proceeding brought by the city, in which the same lot sold on foreclosure in the first case was taken by the city for park purposes, and the question arises, upon distribution, of the amount paid into

court, as to the value of the property. This amount was fixed by
the verdict of a jury under an agreement between Homberg and
the city, and was paid into court under the provisions of Section
3686 of the General Code, and the fund took the place of the
property to be contended for by the interpleading of the ad-
verse claimants under the provisions of Section 3690, General
Code. This amount was $4,375, out of which was paid for
taxes an assessment of $2,195.96, leaving $2,179.04 for distribu-
tion. This amount was claimed by Homberg by virtue of a
mortgage under which he claimed not only a lien but also a right
of ejectment. And it was also claimed by him as owner of the
property under the foreclosure sale.

Plaintiff in error, on the other hand, contended that all
claims under the mortgage are barred by the fifteen years stat-
ute of limitations, Section 11221, General Code, and because
Homberg was not named as the original mortgagee, but held by
assignment not witnessed and acknowledged, that he had no
right of ejectment. Therefore while she admits the debt was
never paid she claims that said foreclosure sale not having been
confirmed until after the bringing of the appropriation ·pro-
ceedings, the superior court was without power to confirm said
sale and the lien of the mortgage had become barred by the
statute of limitations and there was no right of ejectment be-
cause of the form of the assignment.

It seems to have been conceded by counsel that if there had
been no foreclosure proceedings and the mortgage alone ·was to
have been depended on, it would have been too late to set up the
mortgage in the appropriation proceedings and rely upon it,
as more than fifteen years had transpired since the last payment
on the note (*Kerr* v. *Lydecker*, 51 O. S., 240). And under the
case of *Doyle* v. *West*, 60 O. S., 438, even if the finding in the
superior court made at the time the decree of sale was taken
could be alone relied upon, and subsequent proceedings were
without effect, then the fifteen year statute would also apply
to that.

This would probably be true, although the case last cited has
been distinguished in the case of *Graham* v. *Simon*, 76 O. S., 77;
where it is held that an action upon a judgment of a court in

this state may be brought at any time within twenty-one years (Section 11648, General Code), following the case of *Tyler, Exr., v. Winslow,* 15 O. S., 364.

But counsel for defendant in error insist that Homberg became vested with a title under the mortgage to Frankenberger, not because Frankenberger was a mere trustee for him and that the mortgage should have been declared to be his property from the first, but by reason of its assignment to him, and because by the amendment of the section now found in the General Code as Section 8546, that the assignment of a mortgage in order to vest the title does not now require witnesses and acknowledgment but carries all of the mortgagee's interest in the property and land including the legal title and the right of ejectment, if such assignment conforms to the terms of that section; and having legal title that he would therefore be entitled to bring ejectment for possession of the property within the twenty-one year statute of limitations under the case of *Bradford* v. *Hale,* 67 O. S., 316.

The court below held with the defendant in error in this contention.

We do not believe that the amendment found in Section 8546 of the General Code dispensing with witnesses and acknowledgment, can be construed to go to the extent of holding that an assignment under its terms will carry the legal title to the land covered by a mortgage. The positive terms of Section 8510 require that the conveyance of an interest in real property must be acknowledged in the presence of two witnesses. A conveyance to vest a title in a mortgagee sufficient to sustain an action for ejectment must be executed in accordance with the requirements of this section.

The court below also found that the bringing of the appropriation proceedings by the city under the powers of eminent domain had some over-riding power which stopped further action on the part of the superior court in the foreclosure case, and therefore did not rely upon the sale and its confirmation but rather upon the right of ejectment in determining that Homberg was entitled to receive the money held for distribution. 14 N.P.(N.S.), 599; 15 N.P.(N.S.), 541.

We find nothing in the statutes controlling appropriation proceedings that would give the court in which they are instituted jurisdiction over property to be condemned, to the exclusion of the jurisdiction of another court in which foreclosure proceedings, involving the same property, had been previously commenced and sale made but not confirmed. The court where jurisdiction first attached could proceed to final judgment confirming such sale, and such confirmation would relate back to the day of sale and pass title as of that day. *Jashensky* v. *Velrath*, 59 O. S., 540, 545; *Boyd* v. *Longworth*, 11 Ohio, 236; *Oviatt* v. *Brown*, 14 Ohio, 286.

The fact that the sale had not been actually confirmed in the superior court when Homberg was first made a party in the appropriation proceedings does not change the rights of the parties. The city dealt with him as the real party in interest both in fixing the value of the property and in the litigation to determine the amount of the assessment charges collectible, and made no denial as to his right to the fund. The supplemental pleadings filed by him setting up his title acquired under the foreclosure sale, take the place of his original answer. The judgment in the foreclosure proceedings, and Homberg's title thereunder, can not be collaterally questioned here by Mrs. Walters. *Sheldon* v. *Newton*, 3 O. S., 494; *Hammond* v. *Davenport*, 16 O. S., 177, 181-183; *Railroad Co.* v. *Village of Belle Center*, 48 O. S., 273; 24 Cyc., 73.

Homberg, as the owner of the property under the foreclosure sale, is entitled to its proceeds in the appropriation proceedings, and therefore we find that there is no error in the judgment of the court of common pleas in awarding the fund to the defendant in error, although the reasons given for making such award do not meet with our approval.

The judgment of the court below is affirmed.