FADA et al., Appellees,

v.

INFORMATION SYSTEMS AND NETWORKS CORPORATION et al., Appellants.

[Cite as *Fada v. Information Sys. & Networks Corp.* (1994), 98 Ohio App.3d 785.]

Court of Appeals of Ohio,
Montgomery County.

No. 14358.

Decided Nov. 23, 1994.

*Linda S. Stukey,* for appellees.

*Roger J. Makley,* for appellants.

WILSON, Judge.

Appellants Information Systems and Networks Corporation ("ISN") et al., appeal from the Montgomery County Common Pleas Court's decision enforcing a settlement agreement.

The appellants advance four assignments of error. First, the appellants claim that the trial court erred in not relieving them from a settlement agreement based upon a mutual mistake of a material fact. Second, the appellants contend that the trial court erred in finding that all appellants were parties to the original settlement agreement. Third, the appellants argue that the trial court erred in finding that all appellants were properly served and before the court when it enforced the settlement agreement. Finally, the appellants claim that the trial court erred in awarding the appellee additional income generated by his pension plan account when the settlement agreement did not provide for such an award.

Appellees Charles V. Fada and his wife, Norma J. Fada, filed a complaint in February 1991 against ISN, Charles Fada's former employer, and various ISN corporate officers (the "original defendants"). The complaint alleged, *inter alia,* a breach of Fada's employment contract, wrongful termination, and tortious interference with contract.

The parties subsequently reached a settlement agreement in July 1991. The agreement included payment to Fada of benefits from an employee pension plan. A dispute later arose as to whether the agreement included a general release by

Fada of all claims against the appellants. Both sides filed motions to enforce the agreement and a hearing on the motions was held on January 10, 1992.

At the hearing, the issue of how to value Fada's pension benefits was raised. The parties were uncertain of whether Fada's pension account had been segregated from the rest of the pension fund. As a result, the parties agreed that if the pension account had been segregated, Fada would receive the entire amount in the segregated account including any interest. Alternatively, if there had been no segregation, Fada would receive the amount in his pension account as of the most recent annual valuation date of December 31, 1991.

The trial court entered a judgment on January 27, 1992, enforcing the settlement agreement. The court's order required Fada to execute a general release of all claims against his former employer. The order awarded Fada pension benefits valued as of December 31, 1991, plus any additional appreciation or interest which may have become due on his account before it was actually paid out to him.

Shortly thereafter, ISN contacted the pension plan administrator and the pension plan trustee in regard to effectuating the pension provision of the settlement agreement. They informed ISN that they had no legal authority to distribute any pension funds to Fada at that time because such a distribution may have exposed them to liability. Further, they claimed that they were not bound by the court's decision because they were not parties to the action. As a result, in February 1992 the trial court vacated its earlier decision.

Fada then sought leave to amend the caption of his complaint to include the pension plan personnel as parties. The court granted leave, and Fada added the pension plan, plan administrator, plan trustee, plan investment advisor, and the entity responsible for the pension plan records as additional defendants (the "added defendants"). The court permitted the amendment "solely for purposes of enforcing the settlement agreement reached in this matter on July 30, 1991 and ordered and enforced by the Court on January 27, 1992."

New issues subsequently arose regarding whether the pension plan administrator, under ERISA, had the authority to make an early distribution of benefits to Fada even if ordered to do so by the court. A hearing was held regarding this issue on November 12, 1993. The trial court held that the pension plan administrator could make such a distribution and ordered him to do so.

The trial court then entered a second final judgment on December 9, 1993, ordering the pension plan administrator to distribute funds and again enforcing the settlement agreement. As part of its decision, the trial court found that (1) both the original and added defendants had settled the cause of action in 1991; (2) plaintiffs were entitled to enforce the settlement agreement against all

defendants; (3) defendants' counsel stipulated that all added and original defendants were properly served and before the court for a decision on enforcement; (4) the pension plan administrator's common-law authority to resolve disputed claims provided sufficient authorization to pay Fada; and (5) Fada was entitled to the income his pension account generated from the date of its last valuation to the date paid.

The original and added defendants then filed this timely appeal. Appellants' first assignment of error provides:

"The trial court erred in not granting defendants relief from the settlement agreement when it was predicated upon a mutual mistake of material fact."

■ Specifically, the appellants assert that Fada and ISN had entered into the original settlement agreement erroneously believing that ISN possessed the authority to direct pension fund payments to Fada. In reality, only the plan administrator has the authority to direct the plan trustee to disburse funds. ISN claims this mistake materially altered the settlement agreement because Fada's receipt of benefits was beyond the parties' control.

■ Fada contends that no mutual mistake of material fact occurred. Specifically, Fada argues that he remedied any mutual mistake when he added the pension plan, plan administrator, and plan trustee as additional defendants. Furthermore, he claims that provisions in the plan allow the administrator to order the payment of benefits. See Section 5.3 of the ISN Employees' Pension Plan. Finally, Fada contends the court has authority to order the plan amended to effectuate payment. *Id.* at Section 9.3.

Even if Fada's claims are correct, they still do not refute ISN's argument that a mutual mistake occurred. In fact, Fada's first argument implicitly acknowledges such a mistake. ISN and Fada clearly believed in 1991 that ISN could direct the payment of plan funds. Fada added the necessary defendants only after discovering that the plan administrator controlled fund payments. This subsequent action demonstrates that ISN and Fada made a mutual mistake in their initial agreement. Furthermore, Fada's reliance upon the court's and administrator's authority to direct fund payments does not support the conclusion that ISN possessed such authority when the parties settled in 1991.

■ Consequently, we agree with the appellants' assertion that a mutual mistake occurred in 1991. We also recognize that, under certain circumstances, a mutual mistake is a sufficient basis to rescind a contract. *Reilley v. Richards* (1994), 69 Ohio St.3d 352, 632 N.E.2d 507. Nevertheless, we hold that the present mistake was insufficient to vitiate the settlement agreement.

A mutual mistake is a proper basis for rescinding a contract when the mistake relates to a material aspect of the parties' agreement. *Id.* at 352–353, 632 N.E.2d at 508–509. A mistake is material to a contract when it is a mistake " 'as to a basic assumption on which the contract was made [that] *has a material effect on the agreed exchange of performances.*' " (Emphasis added.) *Id.* at 353, 632 N.E.2d at 509, quoting 1 Restatement of the Law 2d, Contracts (1981) 385, Mistake, Section 152(1). Thus, the intention of the parties must have been frustrated by the mutual mistake. *Id.*

In the present case, the parties' mistake did not frustrate their intentions because it did not affect their agreed exchange of performances. In essence, the parties agreed that Fada would receive pension payments in exchange for his promise to execute a general release of all claims against the appellants.

The parties' mistake concerned only the question of *who* had the authority to direct the payment of plan funds. The trial court subsequently determined that the plan administrator had that authority. Moreover, under the court's ruling, Fada would still receive his pension payment, and he would still be required to release the appellants from further litigation. Thus, the parties' mistake regarding who could properly authorize fund payments did not undermine the agreement. Accordingly, we overrule the appellants' first assignment of error.

As their second assignment of error, appellants raise the following:

"The trial court erred in finding that persons who were not parties to a settlement agreement were parties thereto, to the material prejudice of those parties."

The trial court's decision enforcing the settlement agreement states, in part, that the defendants "settled the within cause of action in 1991." The appellants contend that the court's finding is erroneous because the added defendants were not parties to the original settlement agreement. Rather, they claim, the 1991 settlement agreement involved only Fada and the original defendants (ISN and ISN officials). The appellants stress that the added defendants (the pension plan administrator and trustee, etc.) were joined solely to facilitate enforcement of the existing settlement agreement between Fada and the original defendants. The appellants note that Fada's amended complaint asserted no claims against these additional defendants, but added them only to facilitate enforcement. Therefore, the appellants claim that the trial court's finding that all defendants settled the action is erroneous.

In response, Fada argues that the added defendants were essential to enforcement of the settlement. He reasons that "[w]ithout joining the Plan and its Administrator and Trustee, the Court would not have been able to order anyone to disburse the funds * * *." Furthermore, he contends that the court's order

could not have materially prejudiced the added defendants. He claims that the order simply forced the added defendants to fulfill roles assigned by the plan itself.

We agree with Fada's contention that the added defendants were necessary for enforcement of the settlement agreement. This assertion, however, misses the crux of the appellants' argument. Necessary or not, the appellants claim that the trial court erred in finding that *all appellants* were parties to the original settlement.

We find the appellants' argument persuasive. The added defendants clearly did not participate in the original settlement agreement, nor were they named in Fada's original complaint. The added defendants did not participate in the first hearing to enforce the settlement agreement, but were brought into the action only upon the discovery that the original defendants lacked the authority to order the distribution of Fada's pension account. The court permitted Fada to correct this deficiency by amending the caption of his complaint and serving the added defendants. In so doing, the court noted that "these parties are being added solely for the purpose of enforcing the settlement agreement * * *."

Thus, we cannot agree with the trial court's finding that the added defendants were parties to the original 1991 settlement agreement. In fact, the added defendants consistently argued that no early distribution of Fada's pension fund should be made. The trial court's finding should have reflected that only the original defendants participated in settling the action and that the new defendants were added for enforcement only.

The critical inquiry, however, is whether the trial court's erroneous statement materially prejudiced the appellants. The existence of error does not require a disturbance of the judgment unless the error is materially prejudicial to the complaining party. *McQueen v. Goldey* (1984), 20 Ohio App.3d 41, 20 OBR 44, 484 N.E.2d 712. Pursuant to Civ.R. 61, the error must affect the substantial rights of the complaining party or substantial justice must not have been done. It is well established that errors "will not be deemed prejudicial where their avoidance would not have changed the result of the proceedings." *Walters v. Homberg* (1914), 3 Ohio App. 326, syllabus; *Surovec v. LaCouture* (1992), 82 Ohio App.3d 416, 612 N.E.2d 501.

Appellants argue that the error of the trial court in finding that all defendants were parties to the settlement agreement materially prejudiced the added defendants by creating the appearance that the added defendants *voluntarily* agreed to make an early distribution of Fada's pension account to him. In reality, the added defendants were opposed to making such an early distribution and, in fact, refused to do so until ordered by the court. Appellants argue that

the court's finding needlessly exposes them to a risk of future claims based on the premise that they *agreed* to make an early distribution of the pension funds. They also argue that they may be exposed to claims under ERISA, including those for breach of fiduciary duty.

We cannot find that the trial court's finding is materially prejudicial to the appellants. Regardless of whether it may expose them to *future* liability, the finding does not prejudice the appellants in this particular cause of action. There is no evidence that the error in any way affected the outcome of this case. In fact, it is clear that even if the trial court had found that only the original defendants were parties to the settlement agreement, the outcome would have been the same. The added defendants were joined solely to facilitate enforcement of the pension provision of the settlement agreement and that is the only duty that the trial court's judgment imposes upon them. The allegation that the erroneous finding may prejudice the appellants in future actions is not sufficient to show material prejudice. Accordingly, appellants' second assignment of error is overruled.

Appellants' third assignment of error, which is similar to their second assignment of error, provides:

"The trial court erred to defendants' material prejudice in finding that defendants' counsel stipulated that all defendants were properly served and properly before the court for a decision and to allow the court to enforce the settlement agreement."

 The trial court stated in its decision that defense counsel stipulated that all defendants "were properly served and all party Defendants are properly before the Court for a decision on these matters and to allow this Court to enforce the Settlement Agreement made by the parties." Appellants contend that no such stipulation was made. Appellants concede that during the November 1993 hearing, defense counsel stated that the "pension plan" was a party to the action. They argue, however, that this statement did not create the above stipulation.

Again, we find appellants' argument to be persuasive. We can find no evidence of the above stipulation in the record. Further, appellee admits that no such stipulation was made. Thus, the trial court erred in finding that the stipulation was made when it clearly was not.

Again, however, we must consider whether the error materially prejudiced the appellants. See Civ.R. 61; *Walters; McQueen; Surovec, supra.* Appellants assert that this finding may prejudice them in future actions. They argue that this finding is prejudicial to the added defendants in that it creates the appearance that the added defendants *agreed* that the court had authority to order them

to make an early distribution of the pension funds. As stated in our disposition of appellants' second assignment of error, an allegation that the error may prejudice the appellants in future litigation is insufficient to find material prejudice in this case. See *Walters, supra* (no prejudice exists where the outcome of the present case is unchanged).

Furthermore, we can find no material prejudice in this action as a result of the erroneous finding by the trial court. Even if the trial court had not made a specific finding that the appellants had made the above stipulation, the outcome of the proceeding would remain unchanged. Appellants have asserted no arguments as to how the stipulation changed the outcome of the present case. Thus, appellants' third assignment of error is overruled.

The fourth assignment of error provides:

"The trial court erred in awarding Mr. Fada 'income' on his pension plan account when the settlement agreement did not provide for the same."

■■■ At the January 10, 1992 hearing, the trial court clarified the terms of the parties' settlement agreement in order to enforce it. At that time, the parties clearly agreed that Fada was entitled to appreciation on his pension account. The parties agreed that, because Fada was entitled to appreciation on his account, he would be entitled to the value of the account as of December 31, 1991 if it was still part of the whole pension plan. If, however, the account had been segregated, he would be entitled to the account plus any accumulated interest it had earned. As the judgment enforcing this agreement was later vacated, another hearing was held to again enforce the settlement agreement, but the issue of how to value the pension was not revisited.

The trial court's final judgment on December 9, 1993, enforcing the parties' settlement agreement as determined at the January 1992 hearing, provided the following:

"Plaintiff, Charles Fada, shall receive his Pension Plan account in the amount of $27,357.50, being the valuation as of December 31, 1992, plus the amount of income earned in the Plan through, and including, the date of payment made to Plaintiff but not less than an additional $4,737.92 for Plan year 1993, plus $12,98062 [*sic*] per day ($4,737.92 divided by 365 days in 1994) if full payment is not made on or before December 31, 1993."

Apparently, under the terms of the pension plan, the pension accounts are valued only on December 31st of each year, although they generate income throughout the year. Since Fada's pension account had not yet been valued for 1993 at the time of the hearing, the trial court found it to be fair and equitable to award Fada appreciation for 1993 based upon the 1992 rate of appreciation of Fada's pension account. The trial court also provided for $12.98062 per day

appreciation for 1994 if payment was not made earlier, again based on the 1992 appreciation rate.

The appellants claim that during the January 1992 hearing, the parties agreed that Fada was entitled to the amount in his pension account as of the last annual valuation date before payment. Appellants claim that the trial court's decision substitutes its own term for the term agreed upon by the parties inasmuch as it provides that Fada should receive payment in the amount of the last annual valuation date prior to payment *plus* additional income on the account up to the actual date of payment. Appellants argue that, by awarding Fada appreciation on his account after the annual valuation date, the trial court's decision does not reflect the agreement of the parties and improperly embellishes the settlement agreement. Appellants cite *Zigmont v. Toto* (1988), 47 Ohio App.3d 181, 547 N.E.2d 1208, for the proposition that it is improper for a trial court to embellish the terms of a settlement agreement.

Conversely, appellees argue that the trial court did not substitute its own term for that of the parties. Appellees claim that because the parties did not address payment of appreciation after the last annual valuation date, the court was merely construing an omitted term in the parties' contract.

 Initially, we note that although the January 1992 judgment of the trial court enforcing the parties' settlement agreement was vacated, it was proper for the trial court to incorporate the agreed upon terms agreed in its December 9, 1993 judgment. It is well established that "where the parties to an action voluntarily enter into a settlement agreement in the presence of the trial court, the agreement is a binding contract and may be enforced." *Bolen v. Young* (1982), 8 Ohio App.3d 36, 37, 8 OBR 39, 40, 455 N.E.2d 1316, 1318, citing *Spercel v. Sterling Industries, Inc.* (1972), 31 Ohio St.2d 36, 60 O.O.2d 20, 285 N.E.2d 324. Thus, the agreement between the parties was still binding even though the judgment had been vacated.

We cannot agree with appellants that the trial court's award of appreciation on Fada's pension account was an improper embellishment of the parties' original settlement agreement. In *Zigmont*, the appellate court found that the trial court had improperly embellished the parties' settlement agreement by adding a term awarding sole custody of a child to a parent when no such agreement as to custody had been made by the parties. *Zigmont, supra*. We find that case to be distinguishable.

In this case, unlike *Zigmont*, the parties clearly intended that Fada be awarded appreciation on his pension account. When the parties made the initial agreement at the January 1992 hearing, it was logical for them to agree to use the annual valuation date of December 31, 1991 to account for the appreciation since

the valuation date was only ten days prior to the hearing. Such an agreement carried out the parties' intentions.

However, because of unrelated problems, payment had still not been made as of the November 12, 1993 hearing. This hearing occurred over nine months after the last annual valuation date of the pension fund, and therefore, it was no longer equitable to use only the amount as of the annual valuation date to account for appreciation. We find that the trial court's award of additional appreciation past the valuation date was consistent with the parties' intentions to award Fada appreciation on the account and was thus proper.

■ However, we find that it was improper for the trial court to formulate its own method of determining the proper appreciation amount on the account. No evidence was presented as to the actual rate of appreciation in 1993, nor did the parties agree to use the 1992 rate to calculate appreciation for 1993 and beyond. It may well be that the seventeen percent rate used by the trial court is an unusually high rate of appreciation. While under some circumstances it would be permissible for the trial court to establish an equitable formula for awarding appreciation on the pension account, it is not permissible in the context of enforcing a settlement agreement.

■ As stated previously, it is improper for a trial court to embellish the terms of a settlement agreement. *Zigmont, supra.* Where the terms of a settlement agreement are disputed, the trial court should not construe them itself, but should hold an evidentiary hearing to resolve the dispute. *Morform Tool Corp. v. Keco Industries, Inc.* (1971), 30 Ohio App.2d 207, 59 O.O.2d 320, 284 N.E.2d 191. In this case, the settlement agreement between the parties does not clearly establish their intent as to how appreciation should be calculated after the annual valuation date. Thus, we remand to allow the parties to present evidence as to how the appreciation should be calculated. Accordingly, appellants' fourth assignment of error is sustained in part.

The judgment of the trial court is affirmed in part, reversed in part and the cause is remanded for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

GRADY, P.J., and WOLFF, J., concur.

RICHARD K. WILSON, J., retired, of the Second Appellate District, sitting by assignment.